1   **Robert Stempler**, Cal. Bar No. 160299
    Email: Robert@StopCollectionHarassment.com
2   CONSUMER LAW OFFICE OF
    ROBERT STEMPLER, APLC
3   P.O. Box 1721
    Palm Springs, CA 92263-1721
4

5   Telephone (760) 422-2200
    Fax: (760) 479-5957
6

7   Counsel for Plaintiff

8

9                    UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11

12   HANNY ROBINSON,                )   Case No.  CV-09-01996 DDP (JCx)
                                     )
13              Plaintiff,           )   PLAINTIFF'S MEMORANDUM OF
                                     )   POINTS AND AUTHORITIES
14        vs.                        )   OPPOSING MOTION TO DISMISS
                                     )   UNDER FRCP RULE 12(b)(6)
15   MANAGED ACCOUNTS               )
     RECEIVABLE                      )   Time: 10:00 a.m.
16   CORPORATION;                    )   Date: June 29, 2009
     et al.;                         )   Place: Courtroom 3 (LA Spring St.)
17                                   )   Judicial Ofcr: Judge Dean D. Pregerson
                Defendants.          )
18                                   )
                                     )
19                                   )
                                     )
20   _____)

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

# TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.     OVERVIEW OF THE FDCPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

V.      THE COMPLAINT STATES SUFFICIENT FACTS FOR AN FDCPA
        CLAIM TO BE PLAUSIBLE AGAINST EACH DEFENDANT . . . . . . . . 5

        A.      Basic Allegations for An FDCPA Claim  . . . . . . . . . . . . . . . . . . . . 6

        B.      All of the Defendants are Debt Collectors, who Communicated with
Plaintiff directly or about Plaintiff, and thus are Subject to the FDCPA . . . . . . . . 7

        C.      Violations of the FDCPA include 15 U.S.C. §§ 1692b(1), 1692b(2),
1692c(a)(3), 1692d, 1692e, 1692e(2) 1692e(4), 1692e(5), 1692e(7), 1692e(8),
1692e(10), 1692f, 1692f(1), and 1692g(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                1.      Contacts to third persons violated § 1692b . . . . . . . . . . . . . . 9

                2.      Calls to the consumer's work place and or to the Plaintiff after
                        receiving the cease communications letter violated § 1692c . 10

                3.      Any conduct the natural consequence of which is to harass,
                        oppress, or abuse any person violated § 1692d . . . . . . . . . . . 12

                4.      False or misleading representations violate § 1692e . . . . . . . 14

                5.      Unfair or unconscionable means violate § 1692f  . . . . . . . . . 16

                6.      Defendant's failure to comply, violated § 1692g(b)  . . . . . . . 17

VI.     THE COMPLAINT STATES FACTS SUFFICIENT FOR THE
        ROSENTHAL ACT, AS THE ACT INCORPORATES THE FDCPA . . . 19

VII.    THE COMPLAINT STATES FACTS SUFFICIENT FOR INTENTIONAL
        INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE  21

VIII.  THE COMPLAINT STATES FACTS SUFFICIENT FOR INTENTIONAL
       INFLICTION OF EMOTIONAL DISTRESS  . . . . . . . . . . . . . . . . . . . . . . 22

IX.    THE COMPLAINT STATES FACTS FOR INVASION OF PRIVACY  . 24

X.     THE COMPLAINT STATES FACTS FOR § 17200 VIOLATIONS  . . . . 25

XI.    LEAVE TO AMEND SOUGHT,  IF THE MOTION IS GRANTED  . . . . 25

XII.   CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Table of Authorities

Cases

Abels v. JBC Legal Group PC, 227 F.R.D. 541 (N.D.Cal., 2005) . . . . . . . . . . . . 19

Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

      127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Burdick v. Palisades Collection LLC, No. EDCV 07-1057-VAP (Opx),

      2008 WL 80943 (C.D. Cal. Jan. 3, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336 (9th Cir.1996) . . . . . . . . . . . . . . . . 16

Castro v. Executive Trustee Services, LLC, No. CV-08-2156-PHX-LOA,

      2009 WL 438683 (D.Ariz., Feb. 23, 2009) . . . . . . . . . . . . . . . . . . . . . . . . 16

Clark v. Capital Credit & Collection Services, Inc.,

      460 F.3d 1162 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, ,6, 8, 11

Clomon v. Jackson, 988 F.2d 1314 (2nd Cir.1993) . . . . . . . . . . . . . 5, 9, 12, 14, 16

Defenbaugh v. JBC & Associates, Inc.,

      2004 WL 1874978 (N.D.Cal., Aug. 10, 2004) . . . . . . . . . . . . . . . . . . . . . . 25

Doe v. United States, 58 F.3d 494 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 25

Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507 (9th Cir. 1994) . . . . . . . . . . . . 8

Hosseinzadeh v. M.R.S. Associates, Inc., 387 F.Supp.2d 1104 (C.D. Cal. 2005) 19

Johnson v. Credit Intern., Inc., 2005 WL 2401890 (N.D.Cal., July 28, 2005)

Johnson v. JP Morgan Chase Bank, No. CV-F-008-0081 LJO SMS,

      2009 WL 382734 (E.D. Cal., Feb. 13, 2009) . . . . . . . . . . . . . . . . . . . . . . . 22

Joseph v. J.J. Mac Intyre Companies, LLC,

      238 F.Supp.2d 1158 (N.D. Cal., 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Kolker v. Duke City Collection Agency, 750 F.Supp. 468 (D.N.M. 1990) . . . . . . 6

Korea Supply Co. v. Lockheed Martin Corp.,

      29 Cal.4th 1134, 63 P.3d 937 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Palmer v. Far West Collection Services, Inc.,

      2008 WL 5397140 (N.D.Cal., Dec. 18, 2008) . . . . . . . . . . . . . . . . . . . . . . 25

Panahiasl v. CreditCare, Inc., 2007 WL 1994206 (N.D.Cal., July 5, 2007)  . . . . 25

Piper v. Portnoff Law Associates, Ltd., 274 F. Supp. 2d 681 (E.D. Pa. 2003)  . . . 8

Riveria v. MAB Collections, Inc., 682 F.Supp. 174 (W.D.N.Y. 1988)  . . . . . . . . 6

Romine v. Diversified Collection Services, Inc., 155 F.3d 1142 (9th Cir. 1998)  7-8

Schwarm v. Craighead, 552 F. Supp. 2d 1056 (E.D. Cal. 2008)  . . . . . . . . . . . . 8

Simpson v. Nickel, 450 F.3d 303 (7th Cir. 2006)  . . . . . . . . . . . . . . . 4, 5, 16, 17

Skaff v. Meridien North America Beverly Hills, LLC,

        506 F.3d 832 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

State Rubbish Collectors Ass'n v. Siliznoff, 38 Cal.2d 330, 240 P.2d 282 (1952) 23

Swanson v. Southern Oregon Credit Service, Inc.,

        869 F.2d 1222 (9th Cir. 1988)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

Swierkiewicz v. Sorema N.A., 534 U.S. 506,

        122 S.Ct. 992, 152 L.Ed.2d 1 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Virgen v. Sallie Mae, Inc., No. CIV S-06-0341 FCD DAD PS,

        2007 WL 1521553 (E.D. Cal., May 23, 2007) . . . . . . . . . . . . . . . . . 18, n.1

Withers v. Eveland, 988 F.Supp. 942 (E.D.Va. 1997) . . . . . . . . . . . . . . . . . . . . . 6

Statutes

California Rosenthal Fair Debt Collection Practices Act . . . . . . . . . . . . . . . . 18-21

Fair Debt Collection Practices Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-18

Servicemembers Civil Relief Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

I.     INTRODUCTION

Plaintiff's complaint alleges seven claims: (1) Violating the Fair Debt Collection Practices Act ("FDCPA"); (2) Violating the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"); (3) Fraud; (4) Intentional Interference with Prospective Economic Advantage; (5) Intentional Infliction of Emotional Distress; (6) Invasion of Privacy; and (7) Injunctive Relief under California Business and Professions Code.

Defendants brought this Motion to Dismiss under Rule 12(b)(6) [Doc. No. 11] for failure to state a claim against any of the defendants, and also in particular as against the individual defendants.  Defendants also filed a Motion to Strike under Rule 12(f) [Doc. No. 10] for failure to allege sufficient facts to support the prayer for punitive damages under three of the state-law claims (numbers 4-6). As discussed below and in separate opposition, both motions should be denied.

II.    STATEMENT OF FACTS

Defendants Law Offices of Corey Fitzgerald, Mark Bishop, and Deana Righettini (collectively referred to as "Defendants") filed this motion to dismiss and motion to strike.  There are two other defendants named in the complaint, but they have not filed an appearance in this case.  Accordingly, this opposition brief regards the Defendants only, not any other named defendants.

Defendant Law Offices of Corey Fitzgerald is "engaged primarily in the business of collecting debts."  (See Complaint ¶ 4.)  Defendants Mark Bishop and Deana Righettini were employees of Defendant Law Offices of Corey Fitzgerald. (See Complaint ¶¶ 6-7.)  Thus, each of the Defendants is alleged to be a debt collector, under both the Federal and California Acts.  (See Complaint ¶¶ 9, 39, 46.)  The debt at issue was "incurred by plaintiff for personal, family, or household purposes, i.e., household furniture."  (Complaint ¶ 41; see also ¶¶ 9, 48.)

- 1 -

1   As alleged in the Complaint, Defendant Bishop called Plaintiff's cell phone
2   on February 5, 2009, and left a phone message that they were about to sue to
3   enforce the debt.  (See Complaint ¶ 19.) When Plaintiff called back, Defendant
4   Bishop stated "that Plaintiff had written a bad check, to which Plaintiff replied that
5   the $500 check was stopped at Plaintiff's request to her bank."  (Id.)

6   Defendant Bishop represented that he had Plaintiff's letter from the Marine
7   Corps's attorney, and that "they called the Marine Corps attorney about the bad
8   check, who said that the Marine Corps attorney will not represent Plaintiff because
9   it is a criminal charge." (Complaint ¶ 20.)  When Plaintiff asked that the debt be
10  validated in writing, Defendant Bishop stated he "can't do that." (Complaint ¶ 21.)

11  Defendant Righettini called Plaintiff at work (the U.S. Marine Corps).
12  (Complaint ¶ 25; see also ¶¶ 10, 36.)  When Plaintiff stated that she was not
13  permitted to contact Plaintiff's workplace, Righettini said, "Yes I can.  There is
14  nothing that says that I can't." (Id. ¶ 25)  Defendant Righettini accused Plaintiff of
15  writing "a couple of bad checks, to which Plaintiff explained that she never wrote
16  any actual checks, and that MarCorp took the funds electronically, after Plaintiff
17  had told them not to take any funds."  (Id. ¶ 26.)

18  Plaintiff asked Defendant Righettini "to send Plaintiff written validation of
19  the Account, to which Deana represented that she would send the validation by
20  email and regular mail."  (Complaint ¶ 28.)  The letter that Defendant Righettini
21  emailed to Plaintiff "did not include the original creditor or account number, and
22  the balance due seemed incorrect."  (Id. ¶ 29.) Nor did the letter "notify Plaintiff of
23  her rights under the FDCPA or indicate that the letter was written to collect a debt
24  by a debt collector."  (Id. ¶ 31.)

25  "On March 13, 2009, Plaintiff sent a letter by certified mail to Fitzgerald,
26  attention Deana, disputing the Account, and requesting written validation of the
27  Account and to cease communications and not call her at work." (Complaint ¶
28  32.)   Despite being advised that they may not call Plaintiff's workplace (a U.S.

1   Marine Corps's Base), Defendant Righettini "called Plaintiff's work place and

2   spoke with a Sergeant on duty." (Id. ¶ 33.)

3       On March 14, 2009, Defendant Law Offices of Corey Fitzgerald received

4   Plaintiff's letter. (Complaint ¶ 34.) Two days later, Defendant Righettini "called

5   Plaintiff's work place and spoke with the person who answers the phones, who

6   informed Deana that she is not authorized to call the workplace, to which Deana

7   commented that she will continue to call." (Complaint ¶ 35.)  Again, the next day,

8   "someone from a law office called Plaintiff's workplace asking for Plaintiff, to

9   verify Plaintiff's employment, and stated that they will send someone on base to

10  serve a lawsuit on Plaintiff." (Complaint ¶ 36.)

11      Each of the foregoing facts are incorporated into all seven of the claims

12  alleged in the Complaint.  (See Complaint ¶¶ 37, 44, 50, 60, 63, 67, 71.)

13

14  III.   LEGAL STANDARD

15      "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

16  detailed factual allegations." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555,

17  127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to

18  raise a right to relief above the speculative level." Id. "Here, in contrast, we do not

19  require heightened fact pleading of specifics, but only enough facts to state a claim

20  to relief that is plausible on its face." Id. at 570.

21      The Ninth Circuit, in Skaff v. Meridien North America Beverly Hills, LLC,

22  506 F.3d 832, 839 (9th Cir. 2007), stated:

23      When enacted, Rule 8 eliminated the archaic system of fact pleading

24      found in the state codes of pleading applied by the federal courts

25      under the 1872 Conformity Act. Today, "[t]he only function left to be

26      performed by the pleadings alone is that of notice."

27

28

1    In considering the same situation of a complaint that states numerous facts
2 under the FDCPA, but did not specify the sections of the Act allegedly violated,
3 U.S. District Judge Phillips, in Burdick v. Palisades Collection LLC, No. EDCV
4 07-1057-VAP (OPx), 2008 WL 80943, *3 (C.D. Cal. Jan. 3, 2008), stated:

5    For the purposes of a Rule 12(b)(6) motion, it is sufficient that the
6    facts alleged support any valid claim, even if the complaint fails to
7    enunciate which legal theory supports recovery. Conley, 355 U.S. at
8    45-46; see also Crull v. GEM Ins. Co., 58 F.3d 1386, 1391 (9th Cir.
9    1995) (explaining that the failure to cite the correct statute in a
10    complaint does not affect the merits of the claim; factual allegations
11    are what matters).

12

13    "A plaintiff receives the benefit of 'any fact that could be established later
14 consistent with the complaint's allegations.' " Simpson v. Nickel, 450 F.3d 303,
15 306 (7th Cir.2006) [hereinafter cited as "Simpson"]; see also Swierkiewicz v.
16 Sorema N.A., 534 U.S. 506, 512-15, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (notice
17 pleading standard relies on liberal discovery rules and summary judgment motions
18 to define disputed facts and issues and to dispose of unmeritorious claims).

19    Plaintiff needs written discovery and probably two or three depositions to
20 establish the falsity, knowledge, and intent behind several of the representations
21 made by Defendants to prove further violations of the FDCPA, Rosenthal Act, and
22 state tort claims, as explained, below.

23

24 IV.    OVERVIEW OF THE FDCPA
25    In the FDCPA's findings and declaration of purpose, Congress found
26 "abundant evidence of the use of abusive, deceptive and unfair debt collection
27 practices by many debt collectors." 15 U.S.C. § 1692(a).  Congress adopted the
28 FDCPA because of the inadequacy of existing remedies for redressing the injuries

1    to consumers caused by these practices as well as the competitive disadvantage to
2    debt collectors who operate without such abuses.  15 U.S.C. § 1692(a, b, e).
3
4        In <u>Clark v. Capital Credit & Collection Services, Inc.</u>, 460 F.3d 1162, 1171-
5    72 (9th Cir. 2006) [hereinafter cited as "<u>Clark</u>"], the Ninth Circuit stated:
6            Most important, because the FDCPA is a remedial statute
7        aimed at curbing what Congress considered to be an industry-wide
8        pattern of and propensity towards abusing debtors, it is logical for
9        debt collectors-repeat players likely to be acquainted with the legal
10       standards governing their industry-to bear the brunt of the risk.
11       [footnote omitted]  As we have oft repeated, it does not seem "unfair
12       to require that one who deliberately goes perilously close to an area of
13       proscribed conduct shall take the risk that he may cross the line."
14       <u>FTC v. Colgate-Palmolive Co.</u>, 380 U.S. 374, 393, 85 S.Ct. 1035, 13
15       L.Ed.2d 904 (1965);  <u>see also</u> <u>Swanson</u>, 869 F.2d at 1228.
16
17       The Court in <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318 (2nd Cir.1993),
18   stated: "A single violation of § 1692e is sufficient to establish civil liability under
19   the FDCPA. <u>See</u> 15 U.S.C. § 1692k (establishing civil liability for "any debt
20   collector who fails to comply with any provision of this subchapter")." Thus,
21   given the early stage of the case and no discovery having been exchanged, if the
22   Court finds the complaint states a violation of any provision of the FDCPA, the
23   Court should deny the motion to dismiss in its entirety.  <u>See</u> <u>Simpson</u>, <u>supra</u>.
24
25   V.    <u>THE COMPLAINT STATES SUFFICIENT FACTS FOR AN FDCPA</u>
26         <u>CLAIM TO BE PLAUSIBLE AGAINST EACH DEFENDANT</u>
27       Defendants' first and last arguments are that the Complaint fails to state a
28   claim under the FDCPA and that the individual employees should be dismissed, as

1    they were merely acting within the scope of their employment.  (Doc. No. 11, §

2    IV(a), (g).)  Both arguments are wrong.

3        In Clark, supra, 460 F.3d at 1177, the Ninth Circuit stated:

4        In Fox v. Citicorp, we reversed summary judgment on a debtor's §

5        1692d claim because she had presented evidence that the debt

6        collector had called her at work despite her requests that it not do so,

7        which violates § 1692c(a)(1).  15 F.3d at 1516 n. 10.   In so holding,

8        we noted specifically that "it is not unusual for an action to violate

9        more than one FDCPA provision." Fox, 15 F.3d at 1516 n. 10 (citing

10       Statements of General Policy or Interpretation Staff Commentary on

11       the Fair Debt Collection Practices Act, 53 Fed.Reg. 50,097, 50,101

12       (Fed. Trade Comm'n Dec. 13, 1988) ("In many cases several different

13       sections or subsections of the FDCPA may apply to a given factual

14       situation.")).   And, it appears that we (as well as other courts)

15       routinely have allowed debtors to pursue causes of actions under

16       multiple sections of the FDCPA, even though each violation was

17       based upon the same circumstances. [Citations Omitted.]

18

19       A.    Basic Allegations for An FDCPA Claim

20           As stated on page 4 of Defendants' motion to dismiss, the three basic

21   requirements to establish an FDCPA violation are: (1) the plaintiff is the consumer

22   who allegedly owes the debt or a person who has been the object of efforts to

23   collect a consumer debt; (2) the defendant collecting the "debt" is a "debt

24   collector," as defined; and (3) the defendant has engaged in any act or omission in

25   violation of the prohibitions or requirements of the law.  Kolker v. Duke City

26   Collection Agency, 750 F.Supp. 468, 469 (D.N.M. 1990); Riveria v. MAB

27   Collections, Inc., 682 F.Supp. 174, 175-76 (W.D.N.Y. 1988); Withers v. Eveland,

28   988 F.Supp. 942, 945 (E.D.Va. 1997).

1    The Ninth Circuit observed in <u>Romine v. Diversified Collection Services,</u>

2    <u>Inc.</u>, 155 F.3d 1142, 1146 (9th Cir. 1998) [hereinafter cited as "<u>Romine</u>"], that the

3    term "debt collectors" includes attorneys who regularly collect debts.  "The

4    requirement that debt collection be done 'regularly' would exclude a person who

5    collects debt for another in an isolated instance, but would include those who

6    collect for others in the regular course of business."  <u>Id</u>. (Citations omitted.)

7    Element 1.  The Complaint alleges the consumer nature of the debt being

8    collected, and that Plaintiff is the consumer to whom the collection efforts were

9    directed: "incurred by plaintiff for personal, family, or household purposes, i.e.,

10   household furniture." (Complaint ¶ 41; <u>see also</u> ¶ 48.) This element is well stated.

11   Element 2.  The Complaint alleges the defendant collecting the debt is a

12   debt collector, as defined.   Defendant Law Offices of Corey Fitzgerald is

13   "engaged primarily in the business of collecting debts."  (<u>See</u> Complaint ¶ 4.)

14   Defendants Mark Bishop and Deana Righettini were employees of Fitzgerald, and

15   are alleged to have had the collection contacts with Plaintiff, stated in the

16   Complaint.  (<u>See id</u>. ¶¶ 6-7, 25-35.)  Each of the Defendants is alleged to be a debt

17   collector, under the FDCPA.  (<u>Id.</u> ¶ 39.)  This element is well stated.

18   Element 3. See, below, for analysis that the Complaint alleges the

19   Defendants violated specific prohibitions or requirements of the FDCPA.

20

21   B.    <u>All of the Defendants are Debt Collectors, who Communicated with</u>

22   <u>Plaintiff directly or about Plaintiff, and thus are Subject to the FDCPA</u>

23   "The term 'communication' means the conveying of information regarding a

24   debt directly or indirectly to any person through any medium."  FDCPA, 15 U.S.C.

25   § 1692a(2).  "The term "debt collector" means any person who uses any

26   instrumentality of interstate commerce or the mails in any business the principal

27   purpose of which is the collection of any debts, or who regularly collects or

28   attempts to collect, directly or indirectly, debts owed or due or asserted to be owed

1    or due another." Id. § 1692a(6).  The "purpose of the FDCPA is to limit harassing,

2    misleading, and fraudulent contacts and communications with *or about* consumer

3    debtors." Romine, supra, 155 F.3d at 1149 (emphasis added).

4         In this case, Defendant Law Offices of Corey Fitzgerald is a debt collector

5    which had at least two employees (defendants Mark Bishop and Deana Righettini)

6    communicate with Plaintiff directly or with her workplace about the alleged debt.

7    (See Complaint ¶¶4, 6, 7, 9,  14-17, 19, 40, 42.)  Individual employees may be

8    named and are jointly liable for their violations of the FDCPA.  Piper v. Portnoff

9    Law Associates, Ltd., 274 F. Supp. 2d 681, 689-90 (E.D. Pa. 2003).  The

10   FDCPA's definition of debt collector includes " '[e]mployees of a debt collection

11   business, including a corporation, partnership, or other entity whose business is

12   the collection of debts owed another.' " Schwarm v. Craighead, 552 F. Supp. 2d

13   1056, 1070 (E.D. Cal. 2008) (citations omitted). Thus, all of the Defendants are

14   debt collectors, subject to the FDCPA.  As observed in Clark, supra, 460 F.3d at

15   1177, and discussed, below, the communications alleged against each of the

16   Defendants violated multiple sections of the FDCPA.

17

18        C.    Violations of the FDCPA include 15 U.S.C. §§ 1692b(1), 1692b(2),

19   1692c(a)(3), 1692d, 1692e, 1692e(2) 1692e(4), 1692e(5), 1692e(7), 1692e(8),

20   1692e(10), 1692f, 1692f(1), and 1692g(b)

21        As noted in Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507, 1516 n.10

22   (9th Cir. 1994), "it is not unusual for an action to violate more than one FDCPA

23   provision."  If the Court agrees that the Complaint sufficiently alleges one or more

24   violations of the FDCPA and denies the Motion to Dismiss, Plaintiff respectfully

25   requests that it's opinion not dismiss specific sections of the FDCPA, as one or

26   more sections not discussed below may have been violated by the Defendants,

27   which information will be sought during the discovery phase of this case.

28

1      1.      <u>Contacts to third persons violated § 1692b</u>

2   The FDCPA § 1692b(1-3) requires:

3          Any debt collector communicating with any person other than

4   the consumer for the purpose of acquiring location information about

5   the consumer shall--

6          (1) identify himself, state that he is confirming or

7          correcting location information concerning the

8          consumer, and, only if expressly requested, identify his

9          employer;

10         (2) not state that such consumer owes any debt;

11         (3) not communicate with any such person more than

12         once unless requested to do so by such person or unless

13         the debt collector reasonably believes that the earlier

14         response of such person is erroneous or incomplete and

15         that such person now has correct or complete location

16         information; . . .

17

18   Defendant Righettini "called Plaintiff's work place and spoke with a

19   Sergeant on duty." (<u>Id</u>. ¶ 33.)  Defendant Righettini "called Plaintiff's work place

20   and spoke with the person who answers the phones, who informed Deana that she

21   is not authorized to call the workplace, to which Deana commented that she will

22   continue to call." (Complaint ¶ 35.)  Without verifying their identity, "someone

23   from a law office called Plaintiff's workplace asking for Plaintiff, to verify

24   Plaintiff's employment, and stated that they will send someone on base to serve a

25   lawsuit on Plaintiff." (Complaint ¶ 36.)

26         These contacts violate the FDCPA, § 1692b(1-3).  As the complaint states a

27   claim under the FDCPA, the motion to dismiss of Defendant Righettini and

28   Defendant Law Offices of Corey Fitzgerald should be denied. <u>See</u> <u>Clomon</u>, <u>supra</u>.

2.   Calls to the consumer's work place and or to the Plaintiff after receiving the cease communications letter violated § 1692c

The FDCPA § 1692c states:

(a) Communication with the consumer generally

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt--

(1) . . .;

(2) . . . ; or

(3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

(b) Communication with third parties

Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

( c) Ceasing communication

- 10 -

1        If a consumer notifies a debt collector in writing that the

2        consumer refuses to pay a debt or that the consumer

3        wishes the debt collector to cease further communication

4        with the consumer, the debt collector shall not

5        communicate further with the consumer with respect to

6        such debt, except--

7        (1) to advise the consumer that the debt collector's

8        further efforts are being terminated;

9        (2) to notify the consumer that the debt collector or

10       creditor may invoke specified remedies which are

11       ordinarily invoked by such debt collector or creditor; or

12       (3) where applicable, to notify the consumer that the debt

13       collector or creditor intends to invoke a specified

14       remedy.

15       If such notice from the consumer is made by mail,

16       notification shall be complete upon receipt.

17

18       A previous quote in Clark, supra, 460 F.3d at 1177, refers to § 1692c(a)(1).

19  Defendant Righettini called Plaintiff at work (the U.S. Marine Corps).

20  (Complaint ¶ 25; see also ¶¶ 10, 36.)  When Plaintiff stated that she was not

21  permitted to contact Plaintiff's workplace, Righettini said, "Yes I can.  There is

22  nothing that says that I can't." (Id. ¶ 25)  Defendant Righettini then "called

23  Plaintiff's work place and spoke with a Sergeant on duty." (Id. ¶ 33.)  Thus,

24  Defendant Righettini had reason to know that she may not contact Plaintiff's

25  workplace, with such calls violating the FDCPA § 1692c(a)(3) and (b).

26       On March 14, 2009, Defendant Law Offices of Corey Fitzgerald, attention

27  Deana, received Plaintiff's letter by certified mail to disputing the Account and

28  requesting written validation of the Account and to cease communications and not

1   call her at work."  (Complaint ¶ 32.)   Two days later, Defendant Righettini

2   "called Plaintiff's work place and spoke with the person who answers the phones,

3   who informed Deana that she is not authorized to call the workplace, to which

4   Deana commented that she will continue to call."  (Complaint ¶ 35.)  Again, the

5   next day, "someone from a law office called Plaintiff's workplace asking for

6   Plaintiff, to verify Plaintiff's employment, and stated that they will send someone

7   on base to serve a lawsuit on Plaintiff."  (Complaint ¶ 36.)  Thus, Defendant

8   Righettini's calls after receiving Plaintiff's cease communications letter, violated

9   the FDCPA § 1692c( c).

10      These contacts violate the FDCPA, § 1692c.  As the complaint states a

11   claim under the FDCPA, the motion to dismiss of Defendant Righettini and

12   Defendant Law Offices of Corey Fitzgerald should be denied. See Clomon, supra.

13

14        3.    Any conduct the natural consequence of which is to harass,

15            oppress, or abuse any person violated § 1692d

16      The FDCPA § 1692d states: "A debt collector may not engage in any

17   conduct the natural consequence of which is to harass, oppress, or abuse any

18   person in connection with the collection of a debt."

19      The complaint alleges harassing and abusive calls by all of the Defendants.

20   As alleged in the Complaint, Defendant Bishop called Plaintiff's cell phone on

21   February 5, 2009, and left a phone message that they were about to sue to enforce

22   the debt.  (See Complaint ¶ 19.) When Plaintiff called back, Defendant Bishop

23   stated "that Plaintiff had written a bad check, to which Plaintiff replied that the

24   $500 check was stopped at Plaintiff's request to her bank."  (Id.)

25      Defendant Bishop represented that he had Plaintiff's letter from the Marine

26   Corps's attorney, and that "they called the Marine Corps attorney about the bad

27   check, who said that the Marine Corps attorney will not represent Plaintiff because

28   it is a criminal charge."  (Complaint ¶ 20.)  Defendant Righettini called Plaintiff at

work (the U.S. Marine Corps).  (Complaint ¶ 25; see also ¶¶ 10, 36.)  When Plaintiff stated that she was not permitted to contact Plaintiff's workplace, Righettini said, "Yes I can.  There is nothing that says that I can't." (Id. ¶ 25) Defendant Righettini accused Plaintiff of writing "a couple of bad checks, to which Plaintiff explained that she never wrote any actual checks, and that MarCorp took the funds electronically, after Plaintiff had told them not to take any funds."  (Id. ¶ 26.)

"On March 13, 2009, Plaintiff sent a letter by certified mail to Fitzgerald, attention Deana, disputing the Account, and requesting written validation of the Account and to cease communications and not call her at work." (Complaint ¶ 32.)   Despite being advised that they may not call Plaintiff's workplace (a U.S. Marine Corps's Base), Defendant Righettini "called Plaintiff's work place and spoke with a Sergeant on duty." (Id. ¶ 33.)

On March 14, 2009, Defendant Law Offices of Corey Fitzgerald received Plaintiff's letter. (Complaint ¶ 34.) Two days later, Defendant Righettini "called Plaintiff's work place and spoke with the person who answers the phones, who informed Deana that she is not authorized to call the workplace, to which Deana commented that she will continue to call."  (Complaint ¶ 35.)  Again, the next day, "someone from a law office called Plaintiff's workplace asking for Plaintiff, to verify Plaintiff's employment, and stated that they will send someone on base to serve a lawsuit on Plaintiff."  (Complaint ¶ 36.)  Thus, these calls harassed Plaintiff and were abusive, as she was afraid that the calls were not only harassing to her, but that her co-workers and supervisors were being harassed and abused.

These contacts violate the FDCPA, § 1692d, for being harassing and abusive of Plaintiff and co-workers at the U.S. Marine Base.  As the complaint states a claim under the FDCPA, the motion to dismiss any of Defendants should be denied. See Clomon, supra.

4.      False or misleading representations violate § 1692e

In evaluating § 1692e's ban on deception by debt collectors, <u>Swanson v. Southern Oregon Credit Service, Inc.</u>, 869 F.2d 1222, 1227 (9th Cir. 1988) stated:

the least sophisticated debtor standard does apply to an allegation that a debt collector made a "threat to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5). Otherwise, a debt collector could couch threatened action in language that misleads some debtors as to what the debt collector could legally do. Allowing such "misleading" threats would run counter to the plain language of section 1692e.

The FDCPA § 1692e states:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) . . .

(2) The false representation of–

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) . . .

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

1   (5) The threat to take any action that cannot legally be taken or that is

2   not intended to be taken.

3   (6) . . .

4   (7) The false representation or implication that the consumer

5   committed any crime or other conduct in order to disgrace the

6   consumer.

7   (8) . . .

8   (9) . . .

9   (10) The use of any false representation or deceptive means to collect

10   or attempt to collect any debt or to obtain information concerning a

11   consumer.

12

13   As alleged in the Complaint, Defendant Bishop left Plaintiff a phone

14   message that they were about to sue to enforce the debt.  (See Complaint ¶ 19.)

15   When Plaintiff called back, Defendant Bishop stated "that Plaintiff had written a

16   bad check, to which Plaintiff replied that the $500 check was stopped at Plaintiff's

17   request to her bank."  (Id.)  Defendant Bishop represented that "they called the

18   Marine Corps attorney about the bad check, who said that the Marine Corps

19   attorney will not represent Plaintiff because it is a criminal charge." (Complaint ¶

20   20.) Although the complaint does not allege that the threat to sue was false or that

21   the conversation with the Marine Corps Lawyer did not occur, if discovery shows

22   that the representations were false, then they violate FDCPA § 1692e, (5), (7),

23   (10).  "In resolving a Rule 12(b)(6) motion, the district court must construe the

24   complaint in the light most favorable to the plaintiff and accept all well-pleaded

25   factual allegations as true."  Castro v. Executive Trustee Services, LLC, No.

26   CV-08-2156-PHX-LOA, 2009 WL 438683, *4 (D.Ariz., Feb. 23, 2009), citing

27   Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996).

28

1  Defendant Righettini called Plaintiff at work (the U.S. Marine Corps Base).

2  (Complaint ¶ 25; see also ¶¶ 10, 36.)  When Plaintiff stated that she was not

3  permitted to contact Plaintiff's workplace, Righettini said, "Yes I can.  There is

4  nothing that says that I can't." (Id. ¶ 25)  Defendant Righettini accused Plaintiff of

5  writing "a couple of bad checks, to which Plaintiff explained that she never wrote

6  any actual checks, and that MarCorp took the funds electronically, after Plaintiff

7  had told them not to take any funds."  (Id. ¶ 26.) In fact, Defendant Righettini's

8  representations were false, so they violate FDCPA § 1692e, (4), (5), (7), (10).

9  The letter that Defendant Righettini emailed to Plaintiff "did not include the

10  original creditor or account number, and the balance due seemed incorrect."

11  (Complaint ¶ 29.)  If proven true, Defendants' letter violated FDCPA § 1692e,

12  e(2), in light of Plaintiff's allegations that the balances sought by the Defendants

13  did not reflect the limitations under the Servicemembers Civil Relief Act

14  ("SCRA"). (See Complaint ¶¶ 10, 13, 30.)

15  These contacts violate the FDCPA § 1692e, as false and misleading, and

16  Plaintiff requests that she be permitted to present evidence that these statements

17  were false. See Simpson, supra. As the complaint states a claim under the FDCPA,

18  the motion to dismiss any of Defendants should be denied. See Clomon, supra.

19

20            5.   Unfair or unconscionable means violate § 1692f

21  The FDCPA § 1692f states:

22         A debt collector may not use unfair or unconscionable means to

23         collect or attempt to collect any debt. Without limiting the general

24         application of the foregoing, the following conduct is a violation of

25         this section:

26         (1) The collection of any amount (including any interest, fee, charge,

27         or expense incidental to the principal obligation) unless such amount

28

is expressly authorized by the agreement creating the debt or
permitted by law.

Plaintiff alleges that the balances sought by the Defendants did not reflect the limitations under the Servicemembers Civil Relief Act ("SCRA"). (See Complaint ¶¶ 10, 13, 30.)  The SCRA reduces interest to 6% on debt incurred prior to active duty.  50 U.S.C. app. § 527.  Upon notice by Plaintiff of her active duty, all balances sought by the Defendants should have reflected such rate reduction, or they violate § 1692f and 1692f(1) for being unfair and not permitted by law. Plaintiff will need discovery to determine what interest rate was imposed and the inaccuracy of the balances demanded.  See Simpson, supra.

6.     Defendant's failure to comply, violated § 1692g(b)

The FDCPA § 1692g(b) states:

(b) Disputed debts

If the consumer notifies the debt collector in writing within the

thirty-day period described in subsection (a) of this section that the

debt, or any portion thereof, is disputed, or that the consumer requests

the name and address of the original creditor, the debt collector shall

cease collection of the debt, or any disputed portion thereof, until the

debt collector obtains verification of the debt or a copy of a judgment,

or the name and address of the original creditor, and a copy of such

verification or judgment, or name and address of the original creditor,

is mailed to the consumer by the debt collector. Collection activities

and communications that do not otherwise violate this subchapter

may continue during the 30-day period referred to in subsection (a) of

this section unless the consumer has notified the debt collector in

writing that the debt, or any portion of the debt, is disputed or that the

- 17 -

consumer requests the name and address of the original creditor. Any

collection activities and communication during the 30-day period may

not overshadow or be inconsistent with the disclosure of the

consumer's right to dispute the debt or request the name and address

of the original creditor.

Plaintiff sent a letter by certified mail to Fitzgerald, attention Deana, disputing the Account and requesting written validation of the Account, which the Defendants received on March 14, 2009.  (See Complaint ¶¶ 32, 34.)  Two days later, Defendant Righettini "called Plaintiff's work place and spoke with the person who answers the phones, who informed Deana that she is not authorized to call the workplace, to which Deana commented that she will continue to call." (Id. ¶ 35.)  Again, the next day, "someone from a law office called Plaintiff's workplace asking for Plaintiff."  (Id. ¶ 36.) Although Defendants sent a letter to Plaintiff purporting to validate the debt, that letter violated FDCPA § 1692g(b) as it "did not include the original creditor."   (See id. ¶ 29.)

For these numerous potential FDCPA violations, each of which is plausible from the complaint's factual allegations, the Motion to Dismiss should be denied.[1]

VI.   THE COMPLAINT STATES FACTS SUFFICIENT FOR THE
      ROSENTHAL ACT, AS THE ACT INCORPORATES THE FDCPA

"Because defendant has violated the FDCPA for the reasons stated herein, the Court concludes that defendant has also violated Cal. Civ. Code § 1788.17."

---

[1]     Any assertion that Virgen v. Sallie Mae, Inc., No. CIV S-06-0341 FCD DAD PS, 2007 WL 1521553 (E.D. Cal., May 23, 2007) should be applied is misplaced for the proposition that Plaintiff cannot allege a claim under 15 U.S.C. § 1692g(b).  In contrast with page *9 of the Virgen opinion, Plaintiff's Complaint contains no admission that the verification letter missed the 30-day deadline.

1   Hosseinzadeh v. M.R.S. Associates, Inc., 387 F.Supp.2d 1104, 1118 (C.D. Cal.

2   2005).  Based on the previous analysis, the Court should deny Defendants' motion

3   to dismiss the Rosenthal Act claim, certainly as to Cal. Civ. Code § 1788.17.

4           Abels v. JBC Legal Group PC, 227 F.R.D. 541, 548 (N.D.Cal., 2005) states:

5           However, giving section § 1788.2( c) the same reading does not

6           yield the same result for Defendant JBC. The statute merely states

7           that it does not apply to "attorney" or "counselor at law"; it does not

8           outright exclude "law firms". Since the legislature specifically

9           excluded attorneys from the statute but was silent on law firms, this

10          Court presumes that the legislature did not intend to exclude law

11          firms. In addition, taken the allegations from Plaintiff's Complaint as

12          true, Defendant JBC, in the ordinary course of business, regularly, on

13          behalf of itself or others, engages in debt collection using form letters

14          sent through the United States Postal Office, Defendant JBC is a

15          "debt collector" as defined by CA FDCPA.

16

17          The Rosenthal Act contains its own list of proscribed conduct that are

18   relevant to the Complaint. In particular, Civil Code § 1788.10, states:

19          No debt collector shall collect or attempt to collect a consumer

20          debt by means of the following conduct:

21          (a) . . . ;

22          (b) The threat that the failure to pay a consumer debt will result in an

23          accusation that the debtor has committed a crime where such

24          accusation, if made, would be false;

25          ( c) The communication of, or threat to communicate to any person

26          the fact that a debtor has engaged in conduct, other than the failure to

27          pay a consumer debt, which the debt collector knows or has reason to

28          believe will defame the debtor;

1    (d) . . .;

2    (e) The threat to any person that nonpayment of the consumer debt

3    may result in the arrest of the debtor or the seizure, garnishment,

4    attachment or sale of any property or the garnishment or attachment

5    of wages of the debtor, unless such action is in fact contemplated by

6    the debt collector and permitted by the law; or

7    (f) The threat to take any action against the debtor which is prohibited

8    by this title.

9

10   Cal. Civ. Code § 1788.12(a) prohibits:

11          Communicating with the debtor's employer regarding the

12   debtor's consumer debt unless such a communication is necessary to

13   the collection of the debt, or unless the debtor or his attorney has

14   consented in writing to such communication. A communication is

15   necessary to the collection of the debt only if it is made for the

16   purposes of verifying the debtor's employment, locating the debtor, or

17   effecting garnishment, after judgment, of the debtor's wages, or in the

18   case of a medical debt for the purpose of discovering the existence of

19   medical insurance. Any such communication, other than a

20   communication in the case of a medical debt by a health care provider

21   or its agent for the purpose of discovering the existence of medical

22   insurance, shall be in writing unless such written communication

23   receives no response within 15 days and shall be made only as many

24   times as is necessary to the collection of the debt. Communications to

25   a debtor's employer regarding a debt shall not contain language that

26   would be improper if the communication were made to the debtor.

27   One communication solely for the purpose of verifying the debtor's

28   employment may be oral without prior written contact.

1    There are also other violations of the Rosenthal Act, which the Complaint

2    may include, following discovery.  Cal.Civ.Code § 1788.13(j) prohibits: "The

3    false representation that a legal proceeding has been, is about to be, or will be

4    instituted unless payment of a consumer debt is made."

5

6    In that defendant Law Offices of Corey Fitzgerald is a law firm–not an

7    individual lawyer– and these potential Rosenthal Act violations are plausible from

8    the Complaint's factual allegations, the Motion to Dismiss should be denied.

9

10   VII.   THE COMPLAINT STATES FACTS SUFFICIENT FOR INTENTIONAL

11          INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

12   The California Supreme Court, in Korea Supply Co. v. Lockheed Martin

13   Corp., 29 Cal.4th 1134, 1153, 63 P.3d 937 (2003), articulated the elements of

14   intentional interference with prospective economic advantage ("IIPEA") as: "(1)

15   an economic relationship between the plaintiff and some third party, with the

16   probability of future economic benefit to the plaintiff; (2) the defendant's

17   knowledge of the relationship; (3) intentional acts on the part of the defendant

18   designed to disrupt the relationship; (4) actual disruption of the relationship; and

19   (5) economic harm to the plaintiff proximately caused by the acts of the

20   defendant."  (Internal quotes and citations omitted.)

21   These elements are satisfied as follows.  Elements 1 and 2 are that Plaintiff

22   works for the U.S. Marine Corps, and Defendants were aware of this fact,

23   including Plaintiff's phone number on Base.  (See Complaint ¶ 25; see also ¶¶ 10,

24   36.)  As with most government employment, future benefits include promotion

25   and raises in salary, retirement and other benefits, after certain years of service.

26   Element 3 is met by Plaintiff's warning Defendant Righettini that she was not

27   permitted to contact Plaintiff's workplace, to which Righettini said, "Yes I can.

28

1   There is nothing that says that I can't." and then she "called Plaintiff's work place

2   and spoke with a Sergeant on duty" and others on duty (Id. ¶¶ 25, 32-35.)

3        Elements 4 and 5 will require some proof and discovery to prove, perhaps of

4   Plaintiff's supervisor, but the Court should be able to infer that harassing a

5   member of the U.S. Marines on Base and calling her co-workers and others may

6   impair her ability to remain a Marine and receive the same promotions.  Also,

7   Defendant Mark Bishop inferred that Plaintiff bounced a check, and that may

8   become a criminal matter."  (See Complaint ¶ 20.) "Someone from a law office

9   called Plaintiff's workplace asking for Plaintiff, . . . and stated that they will send

10  someone on base to serve a lawsuit on Plaintiff."  (Id. ¶ 36.)  To a member of the

11  military, these claims may result in a charge of "conduct unbecoming an officer"

12  for which a Marine could be dishonorably discharged or imprisoned.

13       Thus, the Court should not dismiss this claim without permitting Plaintiff

14  the opportunity to prove her case with adequate discovery of these elements. To do

15  otherwise is to give debt collectors who harass members of our military and others

16  on Base the benefit of the Plaintiff's lack of evidence from discovery, which

17  would be a sorry policy for the District Courts to adopt.  Defendants cite no

18  authority that a District Court should dismiss claims for lack of evidence.

19

20  VIII.  THE COMPLAINT STATES FACTS SUFFICIENT FOR INTENTIONAL

21         INFLICTION OF EMOTIONAL DISTRESS

22       In Johnson v. JP Morgan Chase Bank, No. CV-F-008-0081 LJO SMS, 2009

23  WL 382734, *7 (E.D. Cal., Feb. 13, 2009), the Court summarized the relevant case

24  law on an IIED claim, as follows:

25        Under California law, a creditor may be liable for the intentional

26        infliction of emotional distress to a debtor. Moore v. Greene, 431

27        F.2d 584 (9th Cir.1970). In the area of collection practices, California

28        recognizes a creditor has a qualified privilege to protect its economic

interest, though the privilege may be lost if the creditor uses outrageous and unreasonable means to seek payment. <u>Symonds</u>, 225 Cal.App.3d at 1469, 275 Cal.Rptr. 871 (citing <u>Bundren v. Superior Court</u>, 145 Cal.App.3d 784, 789-90, 193 Cal.Rptr. 671 (1983)).

The parties dispute whether Chase engaged in outrageous conduct. To be outrageous within the meaning of this cause of action, Chase's conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." <u>Cervantes v. J.C. Penny Co.</u>, 24 Cal.3d 579, 593, 156 Cal.Rptr. 198, 595 P.2d 975 (1979). Generally, the issue of whether Chase's acts or omissions constituted outrageous conduct is a question of fact, to be resolved by a fact-finder. <u>Symonds v. Mercury Savings & Loan Assn.</u>, 225 Cal.App.3d 1458, 1469, 275 Cal.Rptr. 871 (1990).

. . .

The undisputed facts demonstrate that Chase did not participate in any of the collection activities by the other defendants. Chase sold the Account to Collins in April 2004.

Under California law, one who has been subjected to embarrassment, humiliation, fear or other forms of emotional distress, may recover compensatory damages even though she has suffered no physical injury or monetary loss. <u>State Rubbish Collectors Ass'n v. Siliznoff</u>, 38 Cal.2d 330, 338, 240 P.2d 282 (1952) ("Defendant attended the meeting and protested that he owed nothing for the Acme account and in any event could not pay the amount demanded. . . . After two hours of further discussion defendant agreed to join the association and pay for the Acme account. He promised to return the next day and sign the necessary papers.").

1    As with Plaintiff's claim for IIPEA, the elements of damage and causation
2    will require some proof and discovery, perhaps of Plaintiff's supervisor.  For
3    pleading purposes, the Court should be able to infer that harassing a member of
4    the U.S. Marines on Base and calling her co-workers and others may impair her
5    ability to remain a Marine and receive the same promotions.  Also, Defendant
6    Mark Bishop inferred that Plaintiff bounced a check, and that may become a
7    criminal matter."  (See Complaint ¶ 20.) "Someone from a law office called
8    Plaintiff's workplace asking for Plaintiff, . . . and stated that they will send
9    someone on base to serve a lawsuit on Plaintiff."  (Id. ¶ 36.)  To a member of the
10   military, these claims may result in a charge of "conduct unbecoming an officer"
11   for which a Marine could be dishonorably discharged or imprisoned.

12   Thus, the Court should not dismiss this claim without permitting Plaintiff
13   the opportunity to prove her case with adequate discovery. To do otherwise is to
14   give debt collectors who harass members of our military and others on Base the
15   benefit of the Plaintiff's lack of evidence from discovery, which would be a sorry
16   policy for the District Courts to adopt.  Defendants cite no authority that a District
17   Court should dismiss claims for lack of evidence.

18

19   IX.    THE COMPLAINT STATES FACTS FOR INVASION OF PRIVACY

20   Plaintiff states facts for invasion of privacy, based on intrusion upon
21   seclusion. "The essential elements of this claim are: 1) the defendant intentionally
22   intruded, physically or otherwise, upon the solitude or seclusion, private affairs or
23   concerns of the plaintiff; 2) The intrusion was substantial, and of a kind that would
24   be highly offensive to an ordinarily reasonable person; and 3) The intrusion
25   caused plaintiff to sustain injury, damage, loss or harm." Joseph v. J.J. Mac Intyre
26   Companies, LLC, 238 F.Supp.2d 1158, 1169 (N.D. Cal., 2002).

27   As with Plaintiff's claim for IIPEA, the elements of damage and causation
28   requires proof and discovery, perhaps of Plaintiff's supervisor.  For pleading

1  purposes, the Court should be able to infer that harassing a member of the U.S.

2  Marines on Base and calling co-workers invaded her seclusion and the seclusion

3  from such matters that the U.S. Military has expressed in its policies that prohibit

4  such calls on Base. Thus, the Court should not dismiss this claim without

5  permitting Plaintiff the opportunity to prove her case with adequate discovery.

6

7  X.        THE COMPLAINT STATES FACTS FOR § 17200 VIOLATIONS

8          There are many cases in which an FDCPA claim has been used to support a

9  supplemental claim for violations of California Business and Professions Code §

10  17200.  See, e.g., Palmer v. Far West Collection Services, Inc., 2008 WL 5397140

11  (N.D.Cal., Dec. 18, 2008); Panahiasl v. CreditCare, Inc., 2007 WL 1994206

12  (N.D.Cal., July 5, 2007); Johnson v. Credit Intern., Inc., 2005 WL 2401890

13  (N.D.Cal., July 28, 2005); Defenbaugh v. JBC & Associates, Inc., 2004 WL

14  1874978 (N.D.Cal., Aug. 10, 2004). Similarly, the Violations of the Rosenthal Act

15  may be used to show violations of § 17200.

16

17  XI.       LEAVE TO AMEND SOUGHT,  IF THE MOTION IS GRANTED

18          "In dismissing for failure to state a claim, 'a district court should grant leave

19  to amend even if no request to amend the pleading was made, unless it determines

20  that the pleading could not possibly be cured by the allegation of other facts.' "

21  Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).  Plaintiff respectfully

22  requests leave to amend, if the Court grants either motion to dismiss or to strike..

23

24  XII.      CONCLUSION

25          Plaintiff's complaint sufficiently alleges that Defendant violated the Fair

26  Debt Collection Practices Act. Therefore, the Motion to Dismiss should be denied.

27                                          /s/
                                  _____
                                  By: Robert Stempler,
28                                  Counsel of Record for plaintiff